MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorney

    150 Alma den Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5045
    FAX: (408) 535-5066
    jeff.nedrow@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: CR 13-00619-EJD |
|    Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: February 9, 2015 |
| HECTOR LOPEZ-BANUELOS, | Time: 1:30 p.m. |
|    Defendant. | The Hon. Edward J. Davila |

## I. INTRODUCTION

The United States hereby submits its sentencing memorandum in the above-referenced case. The government respectfully requests that the Court adopt the guideline calculations of the United States Probation Office and find a total offense level of 32. The government also agrees with the sentencing recommendation of the United States Probation Office, and respectfully requests that the Court impose a sentence at the low end of the applicable guideline range of 211 months imprisonment.

The United States concurs with the Probation Office's finding that defendant's convictions at trial on counts of possession of cocaine with intent to distribute (Count One), possession of methamphetamine with intent to distribute (Count Two) and being a felon in possession of a firearm

1

(Count Three) constitute a group under the United States Sentencing Guidelines which results in an offense level of 32. As the defendant has not taken any meaningful steps to accept responsibility in this case, he should not receive any reduction for acceptance of responsibility. As a result, the defendant's offense level as to Counts One, Two and Three is a level 32, with a guideline range of 151-188 months in light of the defendant's Criminal History Category. In addition, the defendant's conviction of Count Four, a count of possessing a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. Section 924(c), results in the addition of a mandatory minimum 60 months to the otherwise applicable guideline sentence. The defendant accordingly faces a guideline sentence of 211-248 months imprisonment.

The government acknowledges that even a low-end sentence under these circumstances is a very long sentence. But it is appropriate in this case. The defendant in this case was functioning as a heavily armed methamphetamine trafficker. The defendant possessed a significant amount of cocaine and methamphetamine at his residence in this case. He also maintained a bulletproof vest, a loaded gun, and 50 spare rounds of ammunition, all in the proximity of his wife and two young girls. The defendant's criminal history includes a prior felony drug conviction. All of these facts indicate that this defendant was a committed drug trafficker. In particular, the loaded gun and the bulletproof vest, as well as the defendant's criminal history, demonstrate that he presented a real danger to the community. The facts in this case support a significant sentence.

Based upon the totality of the circumstances, the United States respectfully requests that the Court impose a prison term of 211 months as an appropriate sentence in this case.

## II. GUIDELINE CALCULATIONS

### A. The Offense Conduct

On November 12, 2010, the defendant had been convicted of California Health and Safety Code Section 11350(a), possession of a controlled substance, a felony under California state law, and sentenced to 3 years' probation. PSR, ¶ 6. On or about May 9, 2013, law enforcement officers executed a state probation search at the defendant's residence in Salinas, California. PSR, ¶ 6. The defendant lived at the residence with his wife and two young daughters, age 5 months and two years old. PSR, ¶ 6.

At the time of the search, law enforcement officers encountered the defendant as he was seated

in the driver's seat of a Nissan Pathfinder in front of the residence. PSR, ¶ 7. The defendant falsely told the officers that the residence did not contain any drugs or guns. PSR, ¶ 7. The defendant stated that he owned two more cars in the immediate area, a GMC pickup truck and a Lexus. PSR, ¶ 7.

When the officers searched the Lexus, they recovered a Gucci handbag on the floorboard behind the driver's seat. PSR, ¶ 8. The bag contained a baseball-size chunk of cocaine which appeared to have been broken off a kilo or brick of cocaine. PSR, ¶ 8. In the backyard/ patio area of the residence, investigating officers found seven additional individual baggies of cocaine inside a Louis Vuitton purse on top of a dresser. PSR, ¶ 8. Investigating officers also found a Smith and Wesson 9mm semi-automatic pistol in the Louis Vuitton purse. PSR, ¶ 8. The pistol was loaded with 7 live rounds. PSR, ¶ 8. A DEA analysis confirmed that the total combined weight of the cocaine found in the Gucci bag and the Louis Vuitton bag was approximately 814.5 grams of cocaine. PSR, ¶ 8.

Inside the bottom drawer of the dresser in the backyard, officers found more drugs in a Tupperware container wrapped in electrical tape. PSR, ¶ 9. The Tupperware container contained 464.7 grams of actual methamphetamine. PSR, ¶ 9.

Investigating officers found additional drug trafficking items in the residence. In particular, officers found a digital scale, cutting agent, and pay/owe sheets in the kitchen. PSR, ¶ 10. In the master bedroom, officers found a box of 50 9mm "full metal jacket" ammunition rounds, which were hidden in the wall, behind a false outlet box. PSR, ¶ 10. Officers also found a bulletproof vest of the type typically used by law enforcement. PSR, ¶ 10. The vest had phrases written on it, including "FUCK UR HOOD GAME OVER" and "ONLY GOD CAN JUDGE ME AGAINST ALL ODDS COWARDS WILL SHOOT YOU IN THE BACK SO FACE ME." PSR, ¶ 10. Officer also seized $1,785 from the defendant's person during the booking process. PSR, ¶ 11.

Pursuant to U.S.S.G. Section 2D1.1, comment. (n.8(D)), the drug equivalency tables are used to evaluate the appropriate guideline calculation for the cocaine and methamphetamine possessed by the defendant for distribution purposes. PSR, ¶ 12. 1 gram of cocaine is equivalent to 200 grams of marijuana, and thus 814.5 grams of cocaine is the equivalent of 162,900 grams, or 162.9 kilograms of marijuana. PSR, ¶ 12. 1 gram of methamphetamine is equivalent to 20 kilograms of marijuana, and thus 464.7 grams of methamphetamine is equivalent to 9,294 kilograms of marijuana. PSR, ¶ 12.

Accordingly, the combined marijuana equivalency for the cocaine and the methamphetamine is approximately 9.456.9 kilograms. PSR, ¶ 12.

B. Guideline Calculation For Counts One, Two, and Three

Count One (possession of cocaine with intent to distribute) and Count Two (possession of methamphetamine with intent to distribute) group together as a single group of closely related counts pursuant to U.S.S.G. Section 3D1.2(d). PSR, ¶ 17. Count Three, the count charging the defendant as a felon in possession of a firearm, also groups with the drug counts as conduct closely associated with the drug trafficking conduct. PSR, ¶ 17. Pursuant to U.S.S.G. Section 3D1.3, the offense level applicable to Counts One and Two is used to determine the guideline computation for all three counts, as the drug trafficking counts provide for a higher offense level calculation than the felon in possession count. PSR, ¶ 17.

The guideline for a violation of 21 U.S.C. § 841(a)(1) is found at U.S.S.G. § 2D1.1. PSR, ¶ 18. As noted above, the combined amount of cocaine (814.5 grams) and actual methamphetamine (464.7 grams) in this case results in a marijuana equivalency of 9,456.9 kilograms of marijuana, which establishes a base offense level of 32. PSR, ¶ 18.

The government agrees with the United States Probation Office that the defendant should not receive a reduction in the guideline level for acceptance of responsibility in this case. PSR, ¶ 25. The defendant was convicted via a jury verdict and has not clearly demonstrated acceptance of responsibility for the offenses of conviction, either during trial or during the pre-sentence investigation process. PSR, ¶ 25. He declined to discuss the case with the Probation Officer, PSR ¶ 5, and he did not clearly take responsibility for the offense during the trial. Under these circumstances, the defendant has failed to meet his burden of demonstrating an entitlement to an additional reduction for acceptance of responsibility. Accordingly, the defendant's total offense level for Counts One, Two, and Three is a level 32.

### C. Count Four—Possession Of A Firearm in Connection With a Drug Trafficking Offense

The defendant's guideline range with a total offense level of 32 is 151-188 months in light of his Criminal History Category. PSR, ¶ 62. The defendant is also subject to a mandatory minimum consecutive term of imprisonment of an additional 60 months as a result of his conviction on Count Four. PSR, ¶¶ 60-61. As a result of the combined operation of the guidelines and the statutory minimum consecutive sentence for the conviction on Count Four, the defendant's guideline range is 211-248 months imprisonment, with a mandatory minimum sentence of 180 months imprisonment.

### III. THE GOVERNMENT RECOMMENDS A SENTENCE OF 211 MONTHS IMPRISONMENT

The government joins the Probation Office in requesting that the Court impose a sentence of 211 months in light of the defendant's conduct in this case. The defendant committed two serious crimes in this matter. He possessed and distributed significant quantities of cocaine and methamphetamine. In addition, he armed himself with a firearm as a part of his drug trafficking activities. The defendant maintained dangerous drugs and a loaded gun around his family. He also possessed a law-enforcement style bulletproof vest.

The defendant comes before the Court with two prior felony convictions for drug-related crimes. The defendant's prior drug trafficking convictions could have justified a filing pursuant to 21 U.S.C. § 851 in this case. While the government chose not to take that step, it is worth noting that the defendant could have easily been subject to a 20-year mandatory minimum in light of his 2010 felony drug conviction. While the defendant's 2010 case included only a small amount of drugs, the defendant was found at that time with a scale, loaded guns, and a night vision device. PSR, ¶ 33. The defendant received a short sentence and, apparently undeterred, chose to return to his involvement in armed drug trafficking. The defendant's history of involvement in illegal drug trafficking activity suggests a lengthy sentence is appropriate in this case.

The defendant's conviction of possessing a firearm in connection with his drug trafficking activities significantly drives up the sentence in this case. However, a higher sentence is perfectly appropriate when a drug trafficker chooses to arm himself. The significant additional penalty resulting from a 924(c) conviction stems from Congressional recognition that bringing guns into the world of

5

drug trafficking dramatically escalates the level of dangerousness and violence. The introduction of guns into a drug deal not only increases the chance of a shootout between drug dealers, it puts law enforcement and the community at risk. The defendant's established propensity for using loaded guns in connection with his drug dealing justifies the high sentence in this case.

The government understands that the defense may ask for a variance from the guideline range based upon a variety of factors, including his difficult personal background and family circumstances. The government believes these factors can and should be taken into account by the Court in imposing a low-end guideline sentence. However, many individuals face difficult circumstances similar to those faced by this defendant without becoming involved in armed drug trafficking activity. The government submits that a below-guideline sentence is not justified in this case, and respectfully requests that the Court sentence the defendant within the guideline range of 211-248 months.

The defendant asks that the Court consider the motivations of the SAUSA who prosecuted this case as grounds for awarding a reduction for acceptance of responsibility, on the grounds that the government's decision to proceed to trial was "unreasonable and self-serving." The defendant speculates that the government elected to proceed to trial solely to provide experience for the SAUSA. This argument is factually and legally baseless, and the government submits that it should play no role in the Court's sentencing deliberations. First, the defense offers nothing more than its speculation regarding the motivations of the prosecutor, and provides no factual support for its argument. Second, this argument ignores the fact that the government has the right to proceed to trial as much as a defendant, particularly in a case involving a recidivist, armed drug trafficker who puts the community at risk as the defendant did in this case. Third, to the extent the defense seeks to introduce a discussion of the plea negotiations in this case, the government objects to any such discussion as a violation of Rule 11.

The defendant's efforts to cast aspersions on the conduct of the prosecutor are simply another example of the defendant striving to avoid taking responsibility for his own illegal, dangerous conduct in this case. This defendant had many opportunities to unconditionally accept responsibility for his actions, and he has consciously declined to take advantage of those opportunities. The defendant could have entered an open plea to the counts in the indictment and affirmatively taken responsibility for his role in the offense prior to trial in this case. The defendant also could have affirmatively taken

6

responsibility for his role in the offense following his conviction by providing a statement regarding the offense as a part of the Presentence Investigation. Instead, he refused to discuss the offense with the Probation Office. PSR, ¶ 5. His failure to demonstrate acceptance of responsibility precludes him from consideration for a downward reduction under U.S.S.G. Section 3E1.1. The defendant's request for consideration on this ground should accordingly be denied.

The government stands by its recommendation of 211 months as appropriate in this case, and objects to a sentence of less than 211 months as unjustified. Should the Court determine any variance from the guidelines is appropriate, the government notes in any event that the trial convictions for Counts Two and Four in this case require a mandatory minimum sentence of 180 months imprisonment.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of 211 months imprisonment.

DATED: February 2, 2015              Respectfully submitted,

                                     MELINDA HAAG
                                     United States Attorney


                                     ------------/s/------------
                                     JEFFREY D. NEDROW
                                     Assistant United States Attorney